UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------x

UNITED STATES OF AMERICA

    -v-                                                                          No.  16-CR-512-LTS

TERRY CHAPPELL,

        Defendant.

-------------------------------------------------------x

## MEMORANDUM ORDER

On June 2, 2020, the Court received Defendant Terry Chappell's motion for compassionate release pursuant to 18 U.S.C. § 3582(c)(1)(A). (Docket entry no. 40, the "Motion".) On October 24, 2016, upon pleading guilty, Mr. Chappell was convicted of possessing with the intent to distribute crack cocaine, in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(C), and possessing a firearm in furtherance of a drug trafficking crime in violation of 18 U.S.C. § 924(c)(1)(A)(i). (See docket entry no. 30.) On January 24, 2017, he was sentenced principally to 72 months of imprisonment, to be followed by a four-year supervised release term. (See docket entry no. 36.)

Through the Motion, Defendant seeks either immediate release to a halfway house or a reduction of his custodial sentence to time served and conversion of the unserved portion to a term of supervised release. On June 15, 2020, the Government filed its opposition to the Motion. (Docket entry no. 42, the "Opp.".) On June 16, 2020, the Defendant filed a reply in support of his Motion. (Docket entry no. 43, the "Reply".) The Court has reviewed the parties' submissions carefully and, for the following reasons, Mr. Chappell's Motion will be held in abeyance pending his exhaustion of administrative remedies.

<u>BACKGROUND</u>

Mr. Chappell is a 59-year old man who is currently incarcerated at the Federal Correctional Institution, Fort Dix ("FCI Fort Dix").  (Motion at 2.)  He has been incarcerated since his arrest on May 26, 2016, and is due to be released on July 8, 2021, with a "halfway house" release date in February 2021.  (Motion at 3; Opp. at 3; Reply at 2.)  Mr. Chappell is being treated for advanced psoriasis with potent anti-tumor necrosis factor (anti-TNF) immunosuppressive therapies (Adalimumab and/or Etanercept) that compromise his immune system and undermine his ability to fight off a viral infection, including COVID-19.  (Motion at 9.)  Additionally, he has a Body Mass Index (BMI) of 30.9, and therefore is obese, but not "severely" obese within the meaning of the Centers for Disease Control and Prevention ("CDC") COVID-19 elevated-risk criteria.  <u>Id.</u>; CDC <u>Coronavirus Disease 2019 (COVID-19): People Who Are At Higher Risk for Severe Illness</u>, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-at-higher-risk.html (last accessed June 19, 2020).

On April 16, 2020, counsel for Mr. Chappell wrote a letter to the Warden of FCI Fort Dix requesting that the Bureau of Prisons ("BOP") "immediately transfer Mr. Chappell to home confinement or a halfway house pursuant to 18 U.S.C. § 3624(c), as expanded by the CARES Act" so that Mr. Chappell is "able to isolate himself and take the same precautionary measures that all Americans are taking . . . ."  (Motion at Ex. D, the "Application".)  In the alternative, counsel requested "release to home confinement pursuant to the compassionate release provision of the First Step Act[,]" noting that "[c]ompassionate release is available when 'extraordinary and compelling reasons warrant such a reduction[,]' <u>See</u> 18 U.S.C. § 3582(c)(1)(A)(i)[,]" and asserting that "[t]he risks of death posed by coronavirus to the population at large, and to Mr. Chappell in particular, are just such reasons."  (<u>Id.</u>)  The

Application did not specifically mention Mr. Chappell's immunocompromising psoriasis treatment, obesity, or age-related concerns in light of the COVID-19 pandemic.

In its response to the instant Motion, the Government relates that: "The BOP did not respond to the Defendant's request.  Upon inquiry from the Government, a BOP representative stated that the request had mistakenly not been forwarded to the appropriate individuals, but that BOP would forward it and respond.  The BOP representative added that the BOP viewed the Defendant's application as one for home confinement, not compassionate release."  (Opp. at 4.)

## DISCUSSION

Mr. Chappell seeks an order directing his compassionate release under 18 U.S.C. § 3582(c)(1)(A), which provides, in relevant part, that:

> the court . . . upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment . . . after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that . . . extraordinary and compelling reasons warrant such a reduction . . . and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission.

18 U.S.C.A. § 3582(c)(1)(A) (Westlaw through P.L. 116-143).  The applicable policy statement provides that, if the defendant is not a danger to the safety of any other person or the community, then extraordinary and compelling reasons exist if:

> the defendant is . . . suffering from a serious physical or medical condition, or . . . experiencing deteriorating physical . . . health because of the aging process that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover.

See U.S.S.G. 1B1.13(2) and cmt. N.1. (A)(ii)(I), 1(A)(ii)(III) (U.S. Sentencing Comm'n 2018).

"[N]umerous courts have recently concluded that 'extraordinary and compelling reasons' exist

for the purposes of the policy statement where inmates suffer from medical conditions that place them at a higher risk of serious illness in the event they contract COVID-19." United States v. Gross, No. 15CR769, 2020 WL 1862251, at *3 (SDNY Apr. 14, 2020).

The Government concedes that Mr. Chappell has proffered a factual basis upon which the Court could find that extraordinary and compelling reasons for release exist within the meaning of Section 3582(c)(1)(A), but argues that the Motion should be denied in light of Defendant's failure to exhaust the mandatory administrative remedies. The Government submits that the Court lacks the authority to grant compassionate release at this time because Mr. Chappell's Application "did not provide the BOP with the opportunity to consider the [D]efendant's sole claim here—that the COVID-19 pandemic combined with his medical conditions justify his compassionate release." Opp at 9. The Application "principally sought home confinement under the CARES Act" and, in the alternative, "also sought home confinement through the compassionate release process, but did not provide BOP with the factual bases [Defendant] now relies on." Id. at 9-10. As a result, the BOP has not had the opportunity to consider Mr. Chappell's request that is based on his immunocompromising psoriasis treatment, obesity, and the COVID-19 pandemic. Therefore, the Government argues, the Defendant must be required to exhaust his administrative remedies. The Court agrees that exhaustion of administrative remedies on a record consistent with the request that is now being made of this Court is a necessary next step in this case.

In enacting and amending the compassionate release provision of Section 3582, Congress expressed unambiguously its intent that the BOP have the opportunity and obligation, in the first instance, to decide whether to move for compassionate release and reduced sentences for eligible inmates. Indeed, prison administrators are well-positioned to "prioritize the most

urgent claims" and "investigate the gravity of the conditions supporting compassionate release and the likelihood that the conditions will persist."  United States v. Alam, No. 20-1298, 2020 WL 2845694, at *4 (6th Cir. June 2, 2020); see also United States v. Rodriguez, No. 16-CR-167(LAP), 2020 WL 1866040, at *4 (S.D.N.Y. Apr. 14, 2020) (finding that "[t]he BOP, with its professional medical staff and its systemic measures to address the spread of COVID-19, is well situated to make a determination as to whether [defendant] should be eligible for home confinement" because "the BOP staff at the [facility] are uniquely situated to understand the circumstances in the facility; the risk to [defendant]; and whether . . . there is a way to accommodate [defendant] at the [facility] in a safe manner.")  However, it is the defendant's responsibility to, at a minimum, present to the warden "[t]he extraordinary or compelling circumstances that the inmate believes warrant consideration."  28 C.F.R. § 571.61; see United States v. Mogavero, No. 2:15-CR-00074-JAD-NJK, 2020 WL 1853754, at *2 (D. Nev. Apr. 13, 2020) ("Proper exhaustion necessarily requires the inmate to present the same factual basis for the compassionate-release request to the warden.").  The record before the Court plainly demonstrates that Mr. Chappell did not raise in his Application, and the BOP was not asked to consider, his immunocompromising therapies, obesity, and age-related health concerns in the context of the COVID-19 pandemic.  Accordingly, the Defendant has not satisfied the prerequisite contemplated by Section 3582(c)(1)(A) for bringing his compassionate release motion before this Court.

       Mr. Chappell argues that the Court should waive the exhaustion requirement because failure to do so would cause irreparable injury to Mr. Chappell.  However, Mr. Chappell has proffered no basis for the Court to conclude that he is currently in such need of immediate relief that waiting for the BOP to decide Mr. Chappell's Application would cause irreparable

injury.  He does not allege that he or anyone in his unit is known to be infected or suffering from symptoms; nor does he assert that the BOP is not taking any steps to protect inmates from potential infection.  Furthermore, the Government's opposition papers provide extensive information concerning the BOP's significant efforts to respond to the threat posed by COVID-19 through a six-phased Pandemic Influenza Plan.  In addition to implementing each of the six phases, FCI Fort Dix has made further efforts to contain the spread of the virus, including implementing screening procedures, inmate temperature and symptom checks, the distribution and mandatory use of masks, and extensive cleaning and disinfecting measures.  See Opp. at 14-18.

        The record also demonstrates that Mr. Chappell is regularly receiving appropriate medical care at his facility, and Mr. Chappell has provided no indication that he will have ready access to the requisite medical care for his serious health concerns if his request for immediate home confinement or transfer to a halfway house is granted.  In this connection, the Court notes that neither Mr. Chappell's Motion nor his prior Application includes a proposal for a release plan.  See 28 C.F.R. § 571.61 (an inmate's request to the warden under Section 3582(c)(1)(A) shall, at a minimum, propose release plans, "including where the inmate will reside, how the inmate will support himself/herself, and, if the basis for the request involves the inmate's health, information on where the inmate will receive medical treatment, and how the inmate will pay for such treatment."); see also United States v. Brady, No. S2 18 CR. 316 (PAC), 2020 WL 2512100, at *4 (S.D.N.Y. May 15, 2020) (denying defendant's compassionate release motion, in part, because defendant provided no reason why he would be safer in home confinement and removing him "from prison may be to simply take him out of the proverbial frying pan and place him into the fire, as the general public continues to suffer from COVID-19 as well."); Rodriguez,

2020 WL 1866040, at *4 ("[The defendant] has also not explained how he would be safer outside of prison, where authorities could not enforce isolation and quarantines.").

Indeed, it is unclear exactly what remedy the Defendant seeks, and how such a remedy would sufficiently ameliorate his health concerns. In his Motion, Mr. Chappell initially requests that the Court reduce his sentence to time served, convert the unserved portion of his sentence to a term of supervised release, and modify the conditions of supervision as appropriate, including by ordering a substantial term of location monitoring or home confinement. However, the Motion provides no indication that Mr. Chappell has a home to return to if his request is granted.[1] In his Reply, the Defendant requests that the Court order him to complete his sentence in a community corrections facility where he "can continue to receive medical care, practice better hygiene and social distancing, and remain under the careful eye of the BOP as he transitions back into the community." Reply at 23. However, he provides no specific explanation as to how his transition to a community corrections or residential reentry center, a privately-run congregate setting, would better serve his medical concerns. For these reasons, the BOP is better suited, in the first instance, to investigate Mr. Chappell's unique circumstances, assess the viability of alternatives, and make a fully informed determination.

Because Mr. Chappell's currently pending Application with the BOP does not address the specific medical and infection control issues that have been raised before the Court, and also fails to address the release plan component of the BOP's administrative application process (see 28 C.F.R. § 571.61), the Court will hold this Motion in abeyance pending Mr.

---

[1] The Government notes that Mr. Chappell was living with his mother at the time of his arrest, but his medical records unfortunately state that his mother passed away in June 2017. See Opp. at 21 n.4.

Chappell's prompt submission of a complete and properly supported compassionate release application to the Warden of FCI Fort Dix.

### CONCLUSION

For the foregoing reasons, Defendant's Motion for compassionate release will be held in abeyance pending submission and BOP consideration of a complete and properly supported application to the Warden of FCI Fort Dix for compassionate release on the grounds raised in the Motion.  Defendant shall promptly file notice on the public docket informing the Court of the date and manner of submission of such application (the "Submission Date").

The Government shall promptly notify the Court of the BOP's decision regarding the Defendant's new application once it is issued.  While the Defendant's new application remains pending, the Government shall file a status report informing the Court of the status of the Defendant's application fourteen (14) days following the Submission Date, and again thirty (30) days following the Submission Date.  If the Defendant's new application remains pending after thirty (30) days, the Court will address the parties' arguments concerning merits of the Defendant's instant Motion for compassionate release.

This memorandum order resolves docket entry no. 40.

SO ORDERED.

Dated: New York, New York
June 22, 2020

                                              ___/s/ Laura Taylor Swain_____
                                              LAURA TAYLOR SWAIN
                                              United States District Judge