UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------x

UNITED STATES OF AMERICA

   -v-                                                                     No. 16-CR-512-LTS

TERRY CHAPPELL,

        Defendant.

-------------------------------------------------------x

### MEMORANDUM ORDER

On June 2, 2020, the Court received Defendant Terry Chappell's motion for compassionate release from FCI Fort Dix, where he is currently incarcerated, to a Residential Reentry Center ("RRC") pursuant to 18 U.S.C. § 3582(c)(1)(A). (Docket entry no. 40, the "Motion".) Mr. Chappell had made an application for compassionate release to the Bureau of Prisons ("BOP") on April 16, 2020, but had not detailed the grounds on which he now seeks compassionate release from the Court. (See Id. at Ex. D.) On June 22, 2020, after an initial round of briefing, the Court issued a memorandum order holding Mr. Chappell's motion in abeyance pending the BOP's consideration of an augmented application for compassionate release by Mr. Chappell that addressed the specific health issues, including immunosuppression, raised in his motion before this Court. (See docket entry no. 44, the "June Order".)[1] Mr. Chappell promptly filed an augmented compassionate release application with the BOP, in which he sought immediate release to an RRC. (See docket entry no. 45.)

On June 24, 2020, the BOP denied the Defendant's augmented request for compassionate release. (See docket entry no. 46 at Ex. A.) The BOP noted that it cannot release

---

[1]     The Court assumes the parties' familiarity with the background of this case, which is laid out in detail in the June Order.

an inmate on compassionate release grounds directly to an RRC unless ordered to do so by a judge as a condition of the inmate's release, and invited the Defendant to re-submit his application with a more detailed release plan.  (Id.)  On June 26, 2020, Mr. Chappell requested that the Court waive his obligation under Section 3582(c)(1)(A) to administratively appeal the BOP's decision (and/or wait 30 days from the date the augmented application was made, until July 22, 2020) and consider his Motion on the merits.

On July 2, 2020, the Court held a telephonic hearing on Mr. Chappell's Motion, during which the parties were directed to address several issues, including whether it is likely that an RRC would reduce Mr. Chappell's exposure to COVID-19; how Mr. Chappell expects to address employment and self-support while undertaking pandemic-related precautions if he is to be released to an RRC; and whether Mr. Chappell has met his burden of demonstrating that he does not pose a danger to the public.  (See docket entry no. 48.)  During the conference, and in a letter following the conference dated July 6, 2020, the Government raised the issue of Mr. Chappell's unsuccessful participation in the BOP's Residential Drug Abuse Program ("RDAP").  (See docket entry no. 49.)  Facility records indicate that Defendant was expelled from RDAP in February 2020 for engaging in aggressive communication and threatening violence, and include a form signed by the Defendant acknowledging the factual record memorializing the incident.  (See Id. at Exs. A-B.)  Mr. Chappell was, however, advised that he could reapply to the program after 90 days (Id. at Ex. A), and his BOP disciplinary record remains free of findings of infractions.

On July 9, 2020, the Court entered an Order sharing information it had received from the U.S. Probation Office regarding RRCs, including information regarding "responsibilities of RRC residents for obtaining their own medical care from local community

professionals and, in Mr. Chappell's case, continuing to follow the required substance abuse treatment program." (See docket entry no. 51.)  In the Order, the Court informed the parties that, "[i]n light of the complexity of Mr. Chappell's medical issues and the other responsibilities that he would have in an RRC setting to comply with the terms of his supervision and to protect his own health, it is inclined to believe Mr. Chappell would be well served by completion of the [RDAP] program at FCI Fort Dix prior to any release. . . ." Id.  On July 10, 2020, counsel for Mr. Chappell filed a letter response.  (See docket entry no. 52.)  The Government filed a letter reply on July 14, 2020.  (See docket entry no. 53.)  Counsel for Mr. Chappell filed an additional supplemental letter on July 15, 2020.  (See docket entry no. 54.)  The Court has considered the parties' submissions and arguments carefully and, for the following reasons, grants Mr. Chappell's motion for compassionate release to an RRC.

> Section 3582(c)(1)(A) provides, in relevant part, that:
>
> the court . . . upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment . . . after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that . . . extraordinary and compelling reasons warrant such a reduction . . . and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission.

18 U.S.C.A. § 3582(c)(1)(A) (Westlaw through P.L. 116-148).  The applicable policy statement provides that extraordinary and compelling reasons exist if, inter alia,

> the defendant is . . . suffering from a serious physical or medical condition, or . . . experiencing deteriorating physical . . . health because of the aging process that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover.

The person seeking compassionate release must also demonstrate that he not a danger to the safety of any other person or the community.  See U.S.S.G. 1B1.13(2) and cmt. N.1. (A)(ii)(I), 1(A)(ii)(III) (U.S. Sentencing Comm'n 2018).  The Government has conceded that Mr. Chappell has proffered a factual basis upon which the Court could find that extraordinary and compelling reasons exist within the meaning of Section 3582(c)(1)(A).  See June Order at 4.  The Court concurs, and finds that Mr. Chappell's obesity, and immunosuppressive therapies, and age combine to constitute extraordinary and compelling circumstances warranting compassionate release in light of the COVID-19 pandemic, specifically due to his heightened personal risk of contracting, and suffering severe manifestations of, COVID-19, and the consequent need to provide heightened self-care in ways that are not feasible in the prison setting.  See United States v. Gross, No. 15CR769, 2020 WL 1862251, at *3 (SDNY Apr. 14, 2020) ("[N]umerous courts have recently concluded that 'extraordinary and compelling reasons' exist for the purposes of the policy statement where inmates suffer from medical conditions that place them at a higher risk of serious illness in the event they contract COVID-19.")  Furthermore, exhaustion of Mr. Chappell's administrative remedies is no longer a material issue, as almost 30 days have elapsed from the submission of his augmented compassionate release application and his original compassionate release application was submitted to the BOP on April 16, 2020.

In determining whether and under what circumstances to grant a compassionate release application, the Court must consider the factors set forth in Section 3553(a), which include the need to protect the public from further crimes of the Defendant and the need to provide the Defendant with needed educational and vocational training, and medical care, in the most effective manner.  As noted above, the Court is further required to make a determination that the defendant is not a danger to the safety of any other person or to the community, as

provided in 18 U.S.C. § 3142(g).  Here, although Mr. Chappell's completion of RDAP would not only serve the rehabilitative purposes of training to better manage impulse control and live successfully in a group residential environment, and thereby augment his preparation for reentry and further reduce the risk of recidivism he might pose to the community, the incremental benefits of continued detention in that regard must be weighed against the risk to him of continued incarceration during the time it would take to complete the program and secure an RRC placement.

With the exception of the February 2020, threat incident that resulted in his temporary ineligibility to complete RDAP, Mr. Chappell has had an unblemished disciplinary record during his time in BOP custody, including while he was a pretrial detainee.  He has completed a nonresidential substance abuse treatment program and it appears that he made efforts to obtain more such programming.  He has also done significant coursework toward obtaining his GED.  These are indicators of general success in self-control and significant efforts toward self-improvement that address rehabilitation concerns.  As the Court anticipated at Mr. Chappell's original sentencing, he is now in an age group that statistically presents a reduced recidivism risk.  Significantly, Mr. Chappell has completed approximately 80% of the time he would have been required to serve on the sentence as originally imposed.  Indeed, the BOP is scheduled to release Mr. Chappell to an RRC in February 2021, a few short months from now, whether or not he completes RDAP.  Accordingly, while RDAP completion would certainly strengthen his preparation for reentry, the rehabilitative, as well as the punitive, community protection, deterrence and other relevant goals of sentencing have largely been addressed in the 48 months of custody Mr. Chappell has served thus far.

The Court's principal concerns regarding release at this point, and apparently those of the BOP, focus on Mr. Chappell's lack of a home in which he could serve out the remainder of his sentence in home confinement.[2]  This element of Mr. Chappell's financial and social situation leads him to request release to an RRC, which is a congregate setting.  Given Mr. Chappell's immunosuppressed condition and other risk factors for severe manifestations of COVID-19, a congregate setting that includes residents who go out into the general community regularly, and in which Mr. Chappell himself will need to go out into the community regularly for medical care and to fulfill other treatment conditions of his supervised release, an RRC placement is not clearly a lower-risk situation than the more controlled prison setting for a person as medically vulnerable as Mr. Chappell.[3]  It should, however, give him better access to handwashing and other sanitary facilities, and the record reflects that the RRCs take steps to encourage social distancing, a practice that is impossible in the physical layout of the Fort Dix facility.  Mr. Chappell is aware of the risks and responsibilities that he will face in an RRC and, through his counsel, assures the Court that he is ready to take them on in return for the opportunity to exercise more control over his own physical circumstances and attention to his own medical risks and care.  The Probation Office is willing to assist in planning for his continuity of care while an RRC placement is being secured, and is aware of the particular challenges that his case presents.

---

[2]  Prior to Mr. Chappell's arrest, he was living with his mother, who unfortunately passed away while Mr. Chappell was in custody.  Mr. Chappell has a sister who lives in New York City; while she indicates that she is unable to take Mr. Chappell into her home, she has proffered through Mr. Chappell's counsel that she intends to be active in his care and support when he is transferred to an RRC in New York City.

[3]  The Government has represented that there are no COVID-19 cases in the portion of the Fort Dix facility in which Mr. Chappell is currently being held.

Under these circumstances, the Court is persuaded that compassionate release is warranted and concurs in defense counsel's assessment of RRC residency as Mr. Chappell's "least-worst" option as compared to continued custody at Fort Dix. The risk to Mr. Chappell of contracting, and suffering severe manifestations of, COVID-19 in the crowded prison setting outweigh the potential further benefits to him and to the community of his completing RDAP and/or continuing in custody through his February 2021, scheduled date for release to an RRC. Since Mr. Chappell has no home at this point, release to an RRC is inevitable, and compassionate release to an RRC now, with thoughtful attention to pre-placement planning and continuity of care arrangements that will minimize his risk of exposure as he attends to his health and other treatment needs, is indeed the most appropriate and compassionate outcome.

For the foregoing reasons, the Court grants Mr. Chappell's motion for compassionate release. Mr. Chappell's sentence is hereby shortened to time served plus whatever time is reasonably necessary to secure an RRC placement for him in New York City, and the BOP is directed to release Mr. Chappell to the RRC with, or with provision for, at least 60 days of medication continuity. The Probation Office of the United States District Court for the Southern District of New York is directed to work with BOP and RRC staff and Mr. Chappell to ensure medical care continuity with a local provider in advance of Mr. Chappell's discharge to the RRC. The Court recommends that Mr. Chappell be placed in the Brooklyn Residential Reentry Center, for proximity to his family member who will be assisting in his support.

No additional period of supervised release is imposed by this compassionate release decision pursuant to 18 U.S.C. § 3582(c)(1)(A). Upon release to the RRC, Mr. Chappell will commence service of the four-year supervision period that was imposed on him by the

judgment entered in this case on January 24, 2017.  (Docket entry no. 36).  The special conditions of supervision imposed by that judgment are hereby modified by the addition of the following special condition:

>Defendant shall reside at a Residential Reentry Center for up to the first year of supervised release, or until he has established a residence approved by the Probation Office, whichever comes first.

This memorandum order resolves docket entry nos. 45, 47, 52, and 54.

SO ORDERED.

Dated: New York, New York
July 21, 2020

>\_\_\_/s/ Laura Taylor Swain_____
>LAURA TAYLOR SWAIN
>United States District Judge